57 CCPA

**Application of Ross E. VAN DYKE.**

**Patent Appeal No. 8325.**

United States Court of Customs
and Patent Appeals.

June 11, 1970.

Frank R. LaFontaine, Arthur B. Bakalar, Emeryville, Douglas Baldwin, New York City, attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Judges, and FISHER, Chief Judge, Eastern District of Texas, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 3–7, 9–14 and 16–30 of application serial No. 475,870, filed July 29, 1965, for Process and Catalyst for Hydrocracking Hydrocarbon Oil. Three claims have been allowed. We affirm.

Appellant's invention is a new catalyst for use in hydrocracking hydrocarbons, and a method of using such catalyst. Appellant states that his catalyst composition has an excellent balance between the hydrogenation and the cracking functions. The catalyst comprises an iron group metal (Fe, Co, or Ni, for example) and fluoride incorporated with amorphous acid-acting refractory oxide, the incorporation being effected by contacting a substantially sodium-free refractory oxide hydrogel with an aqueous solution· of an iron group metal compound wherein the metal is present as a cation, and calcining the metal-containing hydrogel. Fluoride is incorporated into the hydrogel before calcination, e. g., as the hydrogel is being formed, or preferably in common solution with the metal cation.

The broadest composition Claim is claim 1:

1. A catalyst suitable for hydrocracking hydrocarbon oils which comprises from about 0.1% to, 14% by weight of an iron group metal and about 0.1% to 5% by weight fluorine incorporated into amorphous acid-acting refractory oxide, incorporation being effected by contacting a hydrogel of the acid-acting refractory oxide substantially free from sodium with an aqueous solution of an iron group metal compound wherein the metal is present as a cation, and calcining said contacted hydrogel, said fluorine being incorporated into the hydrogel prior to calcination.

Claims 3, 5, 6, 11 and 14 limit the calcination temperature to from 800° to 1200° F. Claim 7 specifies nickel as the metal used. Claim 12 also specifies nickel and recites that the atomic ratio of fluoride to nickel in the solution ranges from 1:1 to 5:1; claim 13 depends from claim 12 and adds the recitation that the pH of the solution is from 4 to 7. Claims 4, 6, and 9–11 recite that a transitional or Group VI–B metal is also incorporated in the hydrogel.

Claims 16–30 are drawn to the process of hydrocracking involving the use of

catalysts defined variously as in the composition claims.

The following references were relied upon by the board:

Connolly     2,310,278    Feb. 9, 1943
Hansford et al. 3,120,483    Feb. 4, 1964

Connolly discloses a hydrocracking catalyst formed by contacting a calcined "mixed gel" of silica and alumina with a solution of a Group VI–B hydrogenation metal salt. The catalyst may, at some stage of preparation, be treated with a fluoride compound.

Hansford discloses a silicazirconia catalyst for hydrocracking. The catalyst has both hydrogenating and cracking activity without addition of other metallic components, but it is disclosed that the catalyst may be further promoted by the addition of "conventional hydrogenating promoters" which include "the transitional metals of groups VIB, and VIII, as well as their oxides and/or sulfides."

The board affirmed the examiner's rejection of all the claims under 35 U.S.C. § 103 as obvious over Connolly in view of Hansford. The board's position was stated as follows:

> We will sustain this rejection because we are convinced that the claimed process would have been obvious to any person of merely ordinary skill in the subject art from a consideration of the references. We agree with the Examiner that the Connolly patent describes the impregnation of an alumina silica hydrogel with the metallic hydrogenating component of a catalyst. We agree also that Hansford et al. describe the use of metals of both groups VIb and VIII metals as promoters in a hydrocracking catalyst. Among other such promoting metals are tungsten, iron and nickel. We do not understand that appellant was the discoverer of the promoting effect of these well known catalytic components. Hansford et al. refer to the conventional cracking catalyst base as being a silica-alumina compound

although they direct their invention to a zirconia type of catalyst base.

We do not agree with appellant that Connolly does not show the impregnation of a silica hydrogel with the metallic catalytic promoter. We note such a disclosure at page 2, column 1, lines 55–60, for instance, where the patentee describes the washing of a mixed silica and alumina gel in a solution of a thio-molybdate or thio-tungstate and the subsequent conversion to the sulphide by heating at a temperature of the order of 800° F. for example. We do not understand that Connolly requires two exclusive alternatives (1) coprecipitation of the promoter and the gel base or (2) the impregnation after calcining.

Appellant argues that Connolly's catalyst differs from appellant's catalyst as defined by claim 1 in that Connolly does not produce his catalyst by calcining after impregnation, as required by the claim. We disagree with this view of Connolly. The reference states that the hydrogenating component may be added to the gel by soaking the gel in the metal solution and "thereafter" converting to "the desired sulphide by heating to a temperature of the order of 800° F. for example." Even if this does not amount to an express disclosure of subsequent calcining we think that it renders subsequent calcining obvious as an alternative, especially since 800° F. is at the lower end of appellant's range of calcining temperatures, and since appellant has not given any evidence that prior calcining would make any difference in the final product.

Appellant urges that Connolly's use of a Group VI–B metal, which may be converted to the oxide or sulfide, does not suggest the use of a Group VIII metal as required by appellant's claims. Appellant asserts that the Group VIII metals in his catalyst do not convert to the oxide or sulfide. We find that this fact does not lend any unobviousness to appellant's claims, since the Hansford reference does teach the use of Group VI–B or Group VIII metals, or their

oxides or sulfides, as hydrogenating agents in hydrocracking catalysts, and this would suggest the use of a Group VIII metal in the catalyst of Connolly. That possibly neither Connolly nor Hansford recognized that the Group VIII metal would have the *additional* advantage of being a good cracking agent does not detract from the fact that Hansford expressly suggests the use of such metals in hydrocracking catalysts. The same applies to appellant's arguments that the Group VIII metals are superior in ability to react with the oxide hydrogel and that they do not convert to the oxide or sulfide.

The board did not discuss separately the narrower claims or the process claims, but apparently adopted the examiner's grounds with respect thereto. The examiner viewed the added recitations of calcination temperature, use of nickel as the Group VIII metal, atomic ratios, pH range, and method of using the catalyst as not adding anything beyond the skill of the art. Appellant has not presented sufficient evidence to rebut this conclusion. Appellant's affidavit showed that tungsten, one of the Group VI–B metals, was taken up by the hydrogel only to the extent of 2% of the available tungsten in solution, whereas his specification states that uptake of nickel, for example, was about 80–85%. As mentioned above, this possible increased activity of the Group VIII metals does not detract from the fact that the use of Group VIII metals was suggested by the prior art. We are not dealing here with a situation wherein the prior art suggestion was very broad as to suitable metals. The Hansford reference suggests the use of Group VIII metals or their oxides or sulfides. To select nickel from this group, as required by claims 7, 12 and 13, is not rendered unobvious by proof that nickel is superior in one respect to one of the metals disclosed by Connolly. As to the claims not limited to nickel, the proof is even less persuasive.

The decision of the board is affirmed.

Affirmed.